Argued November 8, affirmed December 19, 1962

# STATE OF OREGON *v.* NELSON
377 P. 2d 29

*Darst B. Atherly,* Eugene, argued the cause and submitted a brief for appellant.

*Robert J. McCrea,* Deputy District Attorney, Eugene, argued the cause for respondent. With him on the brief was William F. Frye, District Attorney.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

O'CONNELL, J.

Defendant was found guilty of the crime of assault with intent to rape a daughter.[1] Defendant was sentenced to life imprisonment in the Oregon State Penitentiary. He appeals from the judgment of conviction.

The first three assignments of error attack the judgment on the ground that the evidence is not sufficent to prove the crime charged in the indictment. The charging part of the indictment alleged that defendant assaulted his daughter "by placing his, the said defendant's, private parts against the private parts" of his daughter. We have carefully examined the evidence and we are of the opinion that it is sufficient to support the verdict and judgment.

When defendant was apprehended he and his eleven-year old daughter were in the front seat of defendant's automobile which was parked on a dead end street in Springfield, Oregon. A Springfield police officer testified that when he approached the automobile he observed that the defendant was bent over in the front seat; that his head faced the driver's side and that his buttocks were bare. He observed the unclothed buttocks were moving "back and forth" and that the daughter was under the defendant. Defend-

---

[1] The relevant statutes are ORS 163.270, 163.210 and 163.220.

ant's trousers were "unzipped" and the daughter's skirt was pulled up "exposing high on the thigh." She was wearing an imitation leather jacket which was partially opened. It appeared that she had nothing on under the jacket; her underclothing was found in the automobile. Defendant and his daughter had been drinking wine and whiskey. A jar of vaseline was found in the defendant's automobile.

Soon after defendant and his daughter were brought to the police station she was taken to a physician who testified that an examination of the girl's sexual organs showed "some evidence of recent bruising which consisted of small reddened areas of the labia or the lips of the vagina" and that "there appeared to be an excess amount of mucous secretion in the vagina." At one point in the direct examination of the daughter, she testified as follows:

"Q  *  *  *  Now, my question was, when you parked there in the car will you tell the jury whether or not your father placed his private parts against your private parts?

"A  Yes, he did.

"Q  And when he did that, what, if anything, did he do?

"A  I don't know."

Most of the daughter's answers were to the effect that she did not know what happened on the occasion of the alleged assault. Defendant contends that her testimony as a whole is of no substance and that without it the state has not proved its case. We disagree. The daughter's testimony that her father had placed his private parts against hers was not directly negated by her other testimony. She was a reluctant witness for the state and obviously attempted to avoid making

statements damaging to her father's defense. But in spite of this reluctance she did testify that her father had placed his private parts against hers and this statement was not repudiated by her in her subsequent testimony.

There was also testimony of a passerby who described the activity within defendant's automobile as "movement just like tussling" and that "it was to me it was that they were making love." The evidence was ample to support the verdict.

■ Defendant moved for mistrial on the ground that counsel for the state repeated to the jury under pretense of impeachment an alleged hearsay statement made by the daughter when she was at the police station. To rebut the state's contention that defendant had placed his hands upon his daughter's breasts the defendant elicited from the daughter the following testimony:

> "Q * * * on that day did your father at any time ever put his hands on your breasts?
> "A No."

Upon cross-examination the state questioned the daughter concerning a written statement which she had signed at the police station immediately after the event in question. The state culminated its questioning as follows:

> "Q And at that time in that statement doesn't it say, 'He pulled up my dress—'"

Defendant moved for a mistrial. The motion was denied. The trial court directed the jury to disregard the statement. The state argues that it was privileged to use the prior statement for impeachment purposes because during cross-examination the daughter made

a statement inconsistent with that made in the written statement at the police station.

It is not necessary to decide whether the state was entitled to impeach the witness under these circumstances because, even assuming that the question was improper, we do not regard it as reversible error. The daughter had testified that her father had placed his private parts against hers and the other evidence supports her statement. Whether or not she stated that defendant had pulled up her dress would be of little significance in the face of this evidence.

■ Three other matters are grouped together under the fifth assignment of error. Two of the specifications of alleged error relate to the trial judge's conduct in the course of the trial. One of these incidents occurred when the daughter was giving her testimony. The trial judge said to the daughter:

"THE COURT: Now, * * * I know it is very difficult, but the gentleman reporting here has to hear. He has to hear everything that you are saying. It's important for you to tell the truth *and that's what I am sure you are doing,* so you will at least speak up so that the reporter can hear you. Will you do that for me?" (Emphasis added)

No objection was made to the court's comment. Although the italicized portion of the comment was not proper, it obviously was simply designed to put the young girl at ease rather than as an attempt to convey to the jury the court's evaluation of the girl's veracity. In the absence of an objection the trial court's error in this instance is not ground for reversal.

■ A comment made by the court on another occasion in the course of the trial is assigned as error. Defendant objected to the form of the question on

direct examination put to the doctor who had examined the daughter. The objection was sustained. At one point in the proceedings the court said:

"THE COURT: Well, now, now. Now, just because it is about five and there is a certain restlessness at the counsel table I'll tell you. If you don't get together on the form of your question, I have been known to send juries out for a half an hour while we wait and let counsel type the question out, writing it out, including the commas and the question mark. So you ask the question correctly. It has to be with reasonable medical certainty. There is a form of asking it. It is very simple and very direct. First, does he have the kind of an opinion that has to be articulated in the form of a standard question. And then secondly, what is that opinion. He only wants you to add about three words. That's correct, isn't it, counsel? About three words?"

Later, upon objection being made by defendant, the court made the further comment:

"THE COURT: That's correct. The objection is sustained.

"Mr. Bailiff, will you take the jury out for about ten minutes and I shall let counsel sit at counsel table with a piece of paper and a pencil until you agree as to the form of the question.

"Ladies and Gentlemen of the jury you will always maintain the highest degree of good humor and patience. If anybody has to be unhappy, it is the judge, nobody else. You may retire with the bailiff."

Defendant contends that "[t]he comments by the Court put the defense counsel in a position where they either had to cooperate with the State, or look like pettifoggers to the jury. We took the latter course, and no doubt prejudiced the Defendant." We would

have no basis for judging how this episode would affect the jury. Reversible error cannot be predicated upon a matter of pure speculation.

■ Finally, defendant asserts error was committed by the trial court in ruling upon the admissibility in evidence of the jar of vaseline found in defendant's automobile. The jar was excluded on the ground that it was irrelevant and immaterial, not having been connected with the alleged assault. Questions put to a prior witness asking him to describe the contents of the jar had been objected to on the ground that the witness, a police officer, was not a pharmaceutical expert. In sustaining that objection, the court had stated:

"THE COURT: The objection as to Christenson testifying as to C is based on that he has not been qualified as an expert, to describe the contents thereof. The Court is not impressed with him as a pharmaceutical expert.

"MR. McCREA: Very well, Your Honor.

"THE COURT: It will just be a little tougher this way, Mr. McCrea. Mark A, B and D [partially filled whiskey bottle, a girl's brassiere, and a pair of girl's panties] as received. It is C, isn't it, about which there appears to be this other item about which you need some pharmaceutical expert testimony."

Defendant argues that by the court's initial ruling the jury was first led to believe that the bottle would be received if the contents were identified by an expert. Then when the contents were identified the court changed its ground. The effect of this, the defendant argues, was "to cause a second display of a physical exhibit which was inadmissible in evidence, and to place undue emphasis upon the inadmissible matter

by creating an invitation to counsel to haggle about the point." There is no merit to the contention. The proferred exhibit was excluded. We do not agree with defendant's contention that undue emphasis was placed upon the excluded exhibit.

There being no reversible error, the judgment must be affirmed.